THE STATE OF IOWA, Appellee, v. L. B. MASON, Appellant.

Obtaining money by false pretense: EVIDENCE. On a prosecution for obtaining money by false pretenses, by reason of having collected a note which defendant claimed at the time was on deposit with a bank as collateral, but in fact had been transferred to another, the State having been permitted to show what defendant had done with another note not involved in the prosecution, .it was competent for defendant to show an agreement or custom by which he was accustomed to collect notes held by the bank as security; as bearing on his innocent motive in receiving the money and as explaining the collateral transaction inquired into by the State.

*Appeal from Allamakee District Court.*— HON. L. E. FELLOWS, Judge.

FRIDAY, DECEMBER 13, 1907.

INDICTMENT charging the crime of obtaining money by false pretenses. Verdict and judgment of guilty, and defendant appeals.— *Reversed* and *remanded.*

*W. W. Bulman,* for appellant.

*H. W. Byers, Attorney General,* and *C. W. Lyon, Assistant Attorney General,* for the State.

WEAVER, C. J.— The defendant was formerly engaged
in the selling of agricultural implements at Waukon, Iowa.
While in this business he took in payment for goods many
promissory notes, among which were one made by Frank
Russell for $23, and another by one J. W. Russell for $14.
The note first named he transferred to one Dean, and the
other he deposited as collateral in the Citizens' Bank of
Waukon, as he was in the habit of doing with most of the
notes taken by him from his customers.  The evidence tends
to show that some six months after the date of the said two
notes the makers called upon the defendant, who informed
them that the notes were in the bank, but that he would re-
ceive payment thereof and would subsequently get their
paper and deliver it to them.  Thereupon Frank Russell
paid him the amount of his note in full, and also the amount
of another small note which was in fact in the bank, and
J. W. Russell paid him $5 to be indorsed upon the note
given by him.  Defendant admits receiving the money, but
testifies that he paid the same to the bank to be credited
upon the debt for which the notes were held as collateral,
but neglected to obtain the notes for the makers or to have
the payments indorsed thereon.  He also swears that he had
no recollection of the fact that one of the notes had been
turned over to Dean, but supposed that all of the papers
were in the bank; and that he received the money in good
faith, expecting, as was his custom in such cases, to pay it
into the bank and release the notes to that extent.  He
further says that at this time he was involved in business
troubles, and within a few weeks thereafter he was com-
pelled to close business and was adjudged a bankrupt, and
that the worry and care incident to these difficulties dis-
tracted his mind from his purpose to secure the proper ap-
plication of the moneys collected by him until after the
commencement of this prosecution.

The indictment is based solely on the transaction with
regard to the note for $23 given by Frank Russell, but the

state was allowed also to. prove what was said and done by defendant as to the other note given by J. W. Russell. To rebut the unfavorable inference to be drawn from these circumstances, defendant's counsel sought to show by him that he took many notes for the sale of goods and deposited substantially all of them as collateral with the Citizens' Bank, and that by some understanding or agreement with the bank or by some custom which had obtained between the bank and himself he was allowed, when called upon by a customer desiring to pay a note, to receive the money, and, upon his accounting therefor, the bank would deliver up the paper to be returned to the maker. At least such was the clear drift of the questions propounded, but on the objection of the state all of this evidence was excluded as being immaterial because the Frank Russell note was not shown to have been deposited in the bank. In this there was prejudicial error. To uphold a conviction it was necessary for the state to show that the money had been received by appellant with corrupt and criminal purpose to convert it to his own use. As tending to show such intent, it proved the defendant's acts with reference to the J. W. Russell note which confessedly had been deposited in the bank. It follows as a matter of common fairness, as well as legal necessity, that when this matter from which the state proposed to argue the existence of criminal intent was given to the jury the accused should have been allowed to give his explanation of it and show, if he could, its innocent character. Moreover, the jury might well believe the defendant's statement that he had forgotten the delivery of the note to Dean and in good faith believed it to be in the bank when he received the money thereon. If so, then, for the purpose of determining whether he obtained the money by intentionally false representations, it was clearly material to know his relations to the bank and the manner in which the business between them with respect to collateral notes had been carried on. It is certainly not an unnatural, and we think not an altogether

unusual, thing for banks holding as collateral the notes taken in the ordinary course of business by retail dealers, to allow the latter to accept payments thereon from their customers, and if this manner of business prevailed between the defendant and his banker it was an important fact for the consideration of the jury. The appeal presents no other question which we need consider at this time.

For the error above pointed out, the cause must be remanded for a new trial.— *Reversed.*